IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANNE BERRY,

          Plaintiff,

v.                                    Civ. No. 11-514 JCH-GBW

FRANK T. BRYANT, M.D., SOUTHWEST
ORTHOPAEDICS, P.C., CHRISTIAN SCHLICHT,
D.O., GERALD CHAMPION REGIONAL MEDICAL
CENTER, OTERO COUNTY HOSPITAL
ASSOCIATION, QUORUM HEALTH RESOURCES,
LLC, TRIAD HEALTHCARE CORP., TRIAD
HOSPITALS, CHS/COMMUNITY HEALTH
SYSTEMS, COMMUNITY HEALTH SYSTEMS
PROFESSIONAL SERVICES CORP., and WHITE
SANDS HEALTH CARE SYSTEMS, LLC,

          Defendants,

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant CHS/Community Health Systems, Inc.'s ("CHS") *Motion to Dismiss for Lack of Personal Jurisdiction* [Doc. 17] and Defendant Triad Healthcare Corporation's ("Triad")[1] *Motion to Dismiss for Lack of Personal Jurisdiction* [Doc. 18]. The Court, having considered the motions, briefs, exhibits, and relevant law, and being otherwise fully informed, finds that the motions should be GRANTED.

## BACKGROUND

This case arises from alleged medical malpractice that Plaintiff suffered related to back surgery that she underwent at Gerald Champion Regional Medical Center ("GCRMC") in

---

[1] On July 25, 2007, another company merged into Triad Hospitals, Inc., and Triad Healthcare Corporation became the surviving company. To the extent that Plaintiff alleges that these are separate entities, Defendant Triad stated that it intends for its motion to apply to Triad Hospitals, Inc. as well as Triad Healthcare Corporation, without admitting that they are currently separate entities. *See* Triad Mot. to Dismiss [Doc. 18] at 1 n.1.

October of 2008. GCRMC was managed and operated by Defendant Quorum Health Resources, LLC ("Quorum"). Plaintiff alleges that, because CHS and Triad owned, either directly or indirectly, all of Quorum's stock, they were alter egos of Quorum. *See* Complaint [Doc. 1] at 9-11 ¶¶ 35, 37, 39. Under Plaintiff's theory, because CHS and Triad owned all of Quorum's stock at the time of the alleged malpractice, they managed, advised and controlled Quorum at that time. *Id*. at 11 ¶ 40. Because they managed, advised, and controlled Quorum, Plaintiff contends, CHS and Triad managed and operated GCRMC and are therefore responsible for the alleged malpractice. *Id*.

      CHS and Triad both filed motions to dismiss the claims against them, contending that this Court lacks personal jurisdiction over them. After the briefing on these motions was complete, Defendant Otero County Hospital Association d/b/a Gerald Champion Regional Medical Center filed for Chapter 11 bankruptcy relief. *See* Doc. 36. Following notice of GCRMC's bankruptcy filing, the Magistrate Judge held a status conference at which the parties confirmed that no severance of parties would be attempted and that they did not object to his entering an automatic bankruptcy stay. *See* Doc. 39. Thereafter, the Magistrate Judge entered an Order staying the case pursuant to 11 U.S.C. § 362(a). The bankruptcy stay does not preclude this court from acting on CHS and Triad's motions to dismiss, as neither of these entities have sought Chapter 11 protection. A stay issued pursuant to 11 U.S.C. § 362(a) applies only to the insolvent defendant and not to solvent codefendants. *See Okla. Federated Gold & Numismatics v. Blodgett*, 24 F.3d 136, 141 (10th Cir. 1994); *see also Teachers Ins. & Annuity Ass'n v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986) (noting same interpretation of section 362 in First, Fourth, Fifth, Sixth, Seventh, and Tenth Circuits). Although a "narrow exception" to this rule may extend the stay to codefendants "in unusual situations as when there is such identity between the debtor and

a third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor," *Blodgett*, 24 F.3d at 141-42, such is not the case here as there is no allegation of identity between GCRMC (the debtor) and either CHS or Triad.

## **LEGAL STANDARD**

Motions to dismiss brought under Fed. R. Civ. P. 12(b)(2) test a plaintiff's theory of personal jurisdiction as well as the facts supporting personal jurisdiction. The standard governing a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) is well established. When a defendant challenges the Court's jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction exists. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). In the preliminary stages of litigation, this burden is "light" and, prior to trial, a "plaintiff is only required to establish a *prima facie* showing of [personal] jurisdiction." *Doe v. Nat'l Med. Serv.*, 974 F.2d 143, 145 (10th Cir. 1992). The plaintiff may make the required *prima facie* showing by coming forward with facts, via affidavit or other written materials, that would support jurisdiction over the defendant if true. *See OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). However, only the well pled facts of a plaintiff's complaint, as opposed to mere conclusory allegations, must be accepted as true. *Ten Mile Indus. Park v. Western Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987). Moreover, a plaintiff's jurisdictional allegations are not automatically accepted as true when contradicted by affidavit, although if the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor. *See Wenz*, 55 F.3d at 1505.

The 14th Amendment's Due Process Clause requires that a defendant be subject to a

court's personal jurisdiction before a judgment can be rendered against it. *See World Wide Volkswagen v. Woodson*, 444 U.S. 286, 291 (1980). In order to be subject to personal jurisdiction, a non-resident defendant must have "minimum contacts" with the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In a diversity action, such as this one, a federal court has personal jurisdiction over non-resident defendants only to the extent that the forum state's long-arm statute permits. *See Fid. and Cas. Co. v. Philadelphia Resins Corp.*, 766 F.2d 440, 442 (10th Cir. 1985). New Mexico's long-arm statute is coextensive with the 14th Amendment's Due Process Clause, such that if jurisdiction is permitted under the Due Process Clause, it is also authorized by the long-arm statute. *See Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006); *Tercero v. Roman Catholic Diocese of Norwich*, 132 N.M. 312, 316 (N.M. 2002).

One type of jurisdiction over a defendant is "general jurisdiction," which arises if defendant's contacts with New Mexico were so "continuous and systematic" that the Court could exercise personal jurisdiction over it even if the underlying suit is unrelated to its contacts with the state. *See Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532-33 (10th Cir. 1996). The other type of personal jurisdiction is "specific jurisdiction," such that the cause of action arises from a particular transaction of business or commission of a tortious act in which the defendant "purposely avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Defendants contend that the Court may not properly exercise either of these types of personal jurisdiction against them.

## ANALYSIS

4

For purposes of determining whether exercising personal jurisdiction over Defendants CHS and Triad is proper, the facts pertaining to each Defendant are substantially similar, and they are generally subject to the same analysis.  Where facts necessitate distinguishing between the two entities, the Court will make that clear.  CHS and Triad have presented the foregoing facts through affidavits of Ben C. Fordham, the Vice President and Chief Litigation Counsel for Community Health Systems Professional Services Corporation.

Both CHS and Triad are Delaware holding companies having their principal place of business in Franklin, Tennessee.  *See* Fordham Affidavit, attached as Ex. 1 to Doc. 17, at 1-2 ¶ 2.[2]  As holding companies, neither CHS nor Triad have any employees.  *Id.*  Neither CHS nor Triad is qualified to do business in New Mexico, neither has any regular business in New Mexico, neither has appointed an agent for service of process in New Mexico, and neither has an office, place of business, real property, or clients in New Mexico.  *Id.* at 3 ¶¶ 10-11.

Triad is the sole member of, and owns all of the stock of, Defendant Quorum.  *Id.* at 2 ¶ 3.  CHS owns all of the issued and outstanding corporate stock of Triad, and thus is the indirect owner of Quorum.  *Id.*  CHS and Triad maintain identities separate from Quorum.  Neither CHS nor Triad controls Quorum's day-to-day operations.  *Id.* ¶ 4.  CHS and Triad maintain accounting and banking records separate from those of Quorum.  *Id.* ¶ 5.  Neither CHS nor Triad is designated as an agent for Quorum, and Quorum is not designated as an agent for either CHS or Triad.  *Id.* at 3 ¶ 6.  Neither CHS nor Triad pays salaries, expenses, or losses attributable to Quorum, nor does either corporation finance Quorum in any other way.  *Id.* ¶ 8.  They are not paid by Quorum's clients for services performed by Quorum, and the only financial benefit that

---

[2] The identical affidavit is attached as Ex. 1 to Triad's Motion to Dismiss [Doc. 18].

either CHS or Triad derives from the operation of Quorum is as a direct or indirect stockholder. *Id*. At the time that a subsidiary of CHS merged with Triad on July 25, 2007, making Quorum an independent subsidiary of CHS, Quorum had already been in continuous existence with active operations for over 30 years. *Id*. ¶ 9. Indeed, Quorum does substantial business with hospitals unrelated to CHS or Triad, and, after the merger, has continued to operate using the assets that it acquired over the years. *Id*. Neither CHS nor Triad formed Quorum to shield themselves from potential liability. *Id*.

Neither CHS nor Triad has an ownership interest in Defendant GCRMC or Defendant White Sands Health Care Systems, LLC. *Id*. at 2 ¶ 3. Neither CHS nor Triad employed any of the doctors, nurses, or hospital staff who were involved in treating Plaintiff, nor are they parties to employment contracts for any of those persons. *Id*. at 4-5 ¶ 14. The doctors, nurses, and hospital staff involved in treating Plaintiff were not agents of CHS or Triad. *Id*. In addition, neither CHS nor Triad was responsible for supervising, credentialing, or scheduling any of the persons involved in Plaintiff's treatment, nor did either of them control the number of doctors, nurses, and hospital staff on duty at the time of treatment or the manner in which those individuals' work was to be performed. *Id*.

In response to CHS and Triad's facts established by affidavit, Plaintiff has submitted several documents purporting to demonstrate CHS and Triad's involvement in operating GCRMC and other hospitals in New Mexico. *See* Pl. Resp. [Doc. 30] (attaching portions of Forms 10-K, a page from Quorum's website, two newspaper articles, and a pleading from another case). As discussed below, these attachments fall short of enabling Plaintiff to meet her burden to establish that this Court has personal jurisdiction over CHS or Triad.

To the extent that Plaintiff attempts to use CHS and Triad's direct or indirect ownership

of Quorum as a means of establishing jurisdiction over them by contending that they conducted business in New Mexico through their subsidiary, this attempt fails. As a general matter, "the mere relationship of parent corporation and subsidiary corporation is not in itself a sufficient basis for subjecting both to the jurisdiction of the forum state, where one is a nonresident and is not otherwise present or doing business in the forum state." *Alto Eldorado Partnership v. Amrep Corp.*, 138 N.M. 607, 618 (Ct. App. 2005) (quoting *Smith v. Halliburton Co.*, 118 N.M. 179, 182 (Ct. App. 1994)). This is the case even if the subsidiary doing business in the state is wholly owned by the parent company over whom personal jurisdiction is sought, because "we will not subject passive investors to our jurisdiction solely on the basis of their investment." *Id*. (citing *Federal Deposit Ins. Co. v. Hiatt*, 117 N.M. 461, 465 (1994)). Thus, Plaintiff must point to something more than corporate ownership of Quorum to demonstrate that HSC and Triad have "minimum contacts with [New Mexico] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id*. at 616 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Plaintiff therefore attempts to argue that CHS and Triad "transacted business in New Mexico by operating and managing the hospital in Alamogordo known as [GCRMC] through its alter-ego Quorum." Pl. Resp. [Doc. 30] at 2. *See also* Complaint [Doc. 1] ¶¶ 37, 39, 40 (alleging that CHS and Triad were alter egos of Quorum and that CHS and Triad "managed, advised and controlled Defendant Quorum and as such, Defendant GCRMC"). Plaintiff correctly contends that "if the parent's control of the subsidiary goes beyond that normally exercised by a majority shareholder, and is 'so complete as to render the subsidiary an instrumentality of the parent, ... the Court may deem the subsidiary the mere 'alter ego' of the parent, and accordingly, may pierce the corporate veil." Pl. Resp. at 12 (quoting *Jemez Agency,*

7

*Inc. v. Cigna Corp.*, 866 F. Supp. 1340, 1343 (D.N.M. 1994) (internal citation omitted). However, Plaintiff has failed to even plead facts necessary to establish that CHS and Triad are alter egos of Quorum, let alone to come forward with evidence sufficient to make its *prima facie* showing.

In order to show that a parent is the alter ego of a subsidiary, Plaintiff must demonstrate that the "subservient corporation was operated not in a legitimate fashion to serve the valid goals and purposes of that corporation but it functioned instead under the domination and control for the purposes of some dominant party." *Garcia v. Coffman*, 124 N.M. 12, 16 (Ct. App. 1997) (citation omitted). An alter ego is established not by merely showing majority or complete stock control, "but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own." *Id*. (citation omitted).

New Mexico law controls the alter ego analysis for purposes of establishing personal jurisdiction over a parent based on the acts of its subsidiary. *See Jemez Agency*, 866 F. Supp. at 1343. New Mexico courts have established a number of factors to consider in determining whether parental control is so complete as to render the alter ego theory appropriate, including: (1) the parent corporation owns all or a majority of the subsidiary's stock; (2) the parent and subsidiary have common officers or directors; (3) the parent finances the subsidiary; (4) the parent subscribes to all of the capital stock of the corporation or otherwise causes its incorporation; (5) the subsidiary has grossly inadequate capital; (6) the parent pays the salaries, expenses, or losses of the subsidiary; (7) the subsidiary has essentially no business except with the parent or no assets other than those conveyed to it by the parent; (8) in the parent corporation's papers and its officers' statements, the subsidiary is referred to as such or as a

department or division; (9) the directors or executives of the subsidiary do not act independently in the interest of the subsidiary, but take direction from the parent; and (10) the formal legal requirements of the subsidiary as a separate and independent corporation are not observed. *See Cruttenden v. Mantura*, 97 N.M. 432, 435 (1982).

While not all of these factors need be met in order for the Court to recognize a parent as the alter ego of its subsidiary, *see id.*, Plaintiff's conclusory allegations and the evidence she has come forward with have not established any more than CHS and Triad's ownership interest in Quorum, and have failed to demonstrate the indicia of domination necessary for an alter ego finding. Conclusory allegations of alter ego status, without specific factual contentions to illustrate domination and control, are insufficient. *See United States v. Van Diviner*, 822 F.2d 960, 964-65 (10th Cir. 1987). In this case, CHS and Triad have come forward with evidence, through Ben Fordham's affidavits, that neither CHS nor Triad has dominion and control over Quorum. The affidavit explicitly states that neither CHS nor Triad controls Quorum's day-to-day operations. *See* Fordham affidavit, attached as Ex. 1 to Doc. 17, ¶ 4. CHS and Triad maintain accounting and banking records separate from those of Quorum, *id.* ¶ 5, and neither CHS nor Triad pays salaries, expenses, or losses attributable to Quorum or finances Quorum in any other way. *Id.* ¶ 8. At the time that it became an indirect subsidiary of CHS, Quorum had been in business for over thirty years, and continued to operate using the assets that it had acquired over the years, doing substantial business with hospitals unrelated to CHS or Triad. *Id.* ¶ 9. Plaintiff's allegations and evidence have not controverted these sworn statements.

Plaintiff has not shown or even pled that either parent financed Quorum, that either parent caused Quorum's incorporation, that Quorum has grossly inadequate capitalization, that either parent pays the salaries or expenses of Quorum employees or covers its losses, that

9

Quorum does business only with its parents, that Quorum has no assets other than those conveyed to it by its parents, that Quorum's executives take direction from the parent, or that the formal legal requirements separating Quorum from its parents have not been observed. Thus, the vast majority of factors that the Court considers in determining alter ego are absent. In addition, nothing pled or shown by Plaintiff indicates that Quorum is being used by its parents for an improper purpose. Quorum was an ongoing concern long before it became a subsidiary of CHS and Triad; it was not formed to shield the parents from potential liability. *Id*. ¶ 9.

In the absence of any of the above indicia of domination and control, Plaintiff attempts to establish that CHS and Triad are the alter egos of Quorum through the introduction of several exhibits. However, these exhibits are of questionable relevance and fail to controvert the evidence put forth by Defendants. Plaintiff submitted portions of two Forms 10-K to attempt to demonstrate that CHS and Triad transact business in New Mexico and that they are the entities ultimately responsible for managing and operating GCRMC. *See* Exs. 1 and 3, attached to Pl. Resp. [Doc. 30]. Exhibit 1 is a portion of a Form 10-K filed by Triad Hospitals, Inc. As an initial matter, although Plaintiff identifies the document she submitted as "TRIAD's 10K for 2007," Pl. Resp. at 6, the document clearly states that it is for the year ending December 31, 2006. *See* Ex. 1 at 1. As previously discussed, a subsidiary of CHS merged with Triad Hospitals, Inc. to form Triad Healthcare Corp. in July, 2007. Thus it is unclear that a document from 2006 is even relevant to a determination of personal jurisdiction for a suit based on an event that took place in 2008, especially to the extent that it seeks to impute statements in the 10-K to CHS at a time that CHS had no ownership interest in Quorum.

Even if Triad Hospital Inc.'s 2006 10-K is relevant to Triad Healthcare Corp.'s relationship to Quorum in 2008, the exhibit does not controvert the evidence that the two

corporations were scrupulously kept separate.  Plaintiff contends that the 10-K demonstrates that Triad operates hospitals in New Mexico, including GCRMC, because it states that Triad "provides health care services through hospitals and ambulatory surgery centers that it owns and/or operates in small cities and selected urban markets...."  Pl. Resp. at 6 (quoting Ex. 1).  However, the same section of the 10-K in which Triad states that it provides health care services also states that management services are provided through its wholly-owned subsidiary, Quorum.  Ex. 1 at 4.  It then specifies that "[t]he terms 'we', 'our', 'the Company', 'us', and 'Triad' refer to the business of Triad Hospitals, Inc. and our subsidiaries as a consolidated entity, except where it is clear from the context that such terms mean only Triad Hospitals, Inc."  *Id*.  General references by a parent corporation to the business of its subsidiary as being part of the business of the parent does not serve to erase the substantive and legal distinction between corporations.  *See, e.g., Moody v. Charming Shoppes of Delaware, Inc*., 2008 U.S. Dist. LEXIS 120585 (N.D. Cal. May 20, 2008) (finding no personal jurisdiction over parent despite 10-K references referring to employees of subsidiaries as its own employees because "statements to the SEC are merely inclusive statements that contend that [the subsidiary's] employees are its own employees," which "is a common business practice, and as the sole owner of [the subsidiary], [the parent] may make generic statements about [the subsidiary's] employees and the operation of [the subsidiary].")  In this case as well, a generic reference in an SEC filing to the business of Quorum as Triad's business, without any further indicia of control, cannot suffice to demonstrate that Triad operated Quorum or GCRMC in a manner that would make jurisdiction appropriate.

Similarly, Plaintiff's Exhibit 3 fails to establish operation of Quorum by its parent.  Exhibit 3 is a Form 10-K for 2008 filed by Community Health Systems, Inc.  The Court first

notes that Defendant CHS is a subsidiary of Community Health Systems, Inc. *See* Ex. A, attached to CHS Rep. [Doc. 33] at 4. Thus, the statements made by Community Health Systems, Inc. in its 10-K cannot properly be attributed to Defendant CHS, a privately held subsidiary of the public corporation making the filing. Moreover, nothing in the 10-K establishes that either CHS or Triad is an alter ego of Quorum. Plaintiff again cites inclusive language such as "[w]e provide healthcare services through these hospitals that we own and operate" and "[w]e generate revenues by providing a broad range of general and specialized hospital healthcare services to patients in the communities in which we are located" to suggest that some parent of Quorum is responsible for the operation and management GCRMC. Pl. Resp. at 6. As with the cited 10-K filed by Triad Hospitals, Inc., Community Health Systems, Inc.'s 10-K explicitly indicates that it refers to itself and its subsidiaries on a collective basis in order to make the document easier for investors to read:

> Throughout this Form 10-K, we refer to Community Health Systems, Inc., or Parent Company, and its consolidated subsidiaries in a simplified manner and on a collective basis, using words like "we" and "our." This drafting style is suggested by the Securities and Exchange Commission, or SEC, and is not meant to indicate that the publicly traded Parent Company or any other subsidiary of the Parent Company owns or operates any asset, business, or property. The hospitals, operations, and businesses described in this filing are owned and operated, and management services provided, by distinct and indirect subsidiaries of Community Health Systems, Inc.

Ex. 3 at 1. Thus, references in this 10-K to Quorum's business as the business of its parent does not contradict CHS and Triad's evidence that they do not exhibit control over Quorum, and do not provide evidence of alter ego.

Plaintiff's Exhibit 2 contains printouts from two separate websites. The first printout notes that Quorum was acquired by Community Health Systems in 2007, and discusses Quorum's business. It does nothing to support personal jurisdiction against either CHS or Triad.

12

The second printout is from a website of a separate entity, Community Health Systems Professional Services Corporation (not Defendant CHS). It does not demonstrate any control over Quorum by CHS or Triad. Moreover, the page contains an explanation similar to the one in Community Health Systems, Inc.'s 10-K, explaining that, in order to comply with SEC regulations, all affiliated companies are referred to in a consolidated fashion, and such statements of consolidation "are not intended to bind or imply that the actions of one legal entity should be attributed to the actions of another legal entity." Ex. B, attached to CHS Rep. [Doc. 33]. Thus, it does not help contradict CHS or Triad's evidence with respect to operation or control.

Finally, Plaintiff's Exhibits 4 and 5 fail to establish that this Court may exercise personal jurisdiction over CHS or Triad. Plaintiff contends that Exhibit 4 demonstrates that CHS and Triad hold themselves out as being responsible for managing and operating GCRMC and that it "is an admitted fact in this case" that Triad operates GCRMC. However, Exhibit 4 is an Answer filed by Quorum (not Triad or CHS) in a separate state court lawsuit filed by other plaintiffs. Not only is Exhibit 4 from a separate action, but, in its Answer, Quorum specifically denies the very assertion that Plaintiff has represented is an admitted fact in this case. Namely, in paragraphs 7, 10, and 12 of the complaint that is the subject of the Answer in Exhibit 4, the plaintiffs contend that CHS and Triad are doing business in New Mexico through their alleged alter ego Quorum, and that CHS and Triad managed, advised, and controlled Quorum. *See* Complaint, attached as Ex. D to CHS Rep. [Doc. 33]. Quorum specifically denied these allegations regarding control by CHS or Triad. *See* Ex. 4 at 2. Thus, Exhibit 4 does not help Plaintiff. Nor does Exhibit 5, which consists of two newspaper articles that identify Quorum as the manager of GCRMC. These articles, to the extent that they are even proper as an attempt to

establish minimum contacts, provide no information about Quorum's ownership or management structure, the role of CHS or Triad with respect to any of its subsidiaries, or the identities of the corporate entities responsible for the operation of Quorum or GCRMC. Therefore, none of the written materials proffered by Plaintiff establish minimum contacts of CHS or Triad with New Mexico or contravene the affidavit evidence CHS and Triad presented related to the alter ego question.

Plaintiff has also requested that, if this Court is considering granting CHS and Triad's motions to dismiss, she be allowed to conduct discovery to establish the degree of control over Quorum exhibited by CHS or Triad. *See* Pl. Resp. at 13. To that end, she has attached an Affidavit of Counsel pursuant to Fed. R. Civ. P. 56(d) as Ex. 6.[3] In her Affidavit of Counsel, Plaintiff seeks Court authorization of the following discovery, "at a bare minimum":

> production of Defendant's policies and procedures for Gerald Champion Regional Medical Center, payroll documents; credentialing and hiring policies, and information for specific employees, budget information, salary information, profit and losses, accounts payable and accounts delinquent; corporate structure, articles of incorporation, the identities and depositions of those individuals who set the policies for Defendant Community Health Systems, Inc. and Defendants Triad, [Quorum] and those individuals who are responsible for hiring, retention, firing, performance reviews, etc., staffing, credentialing and peer review procedures for the facility management of [GCRMC], budgetary information detailing where [GCRMC] operating funding is derived from, as well as information/documentation for the filing of the TRIAD/CHS's 10K's.

Ex. 6 at 1-2 ¶ 2.

Plaintiff's request for discovery is made in the context of responding to a motion to

---

[3] Plaintiff's affidavit of counsel is titled "Rule 56(f) Affidavit." *See* Ex. 6. The operative language of Rule 56(d) was previously found at Rule 56(f), prior to the 2010 amendments to the Federal Rules of Civil Procedure, and the Rule and the case law governing it remain substantively the same.

dismiss filed pursuant to Fed. R. Civ. P. 12(b)(2).  By definition, a Rule 56(d) affidavit is made in the context of responding to a motion for summary judgment.  Nonetheless, the Court will treat the affidavit as if it was providing the basis for a separate motion for discovery.  Even treating the affidavit in this manner, however, the Court cannot find that jurisdictional discovery in this matter would be fruitful.  Plaintiff has not made a colorable claim for personal jurisdiction over CHS or Triad, and she has not made any well-pled factual claims to controvert CHS and Triad's evidence that they are not "doing business" in New Mexico.  Plaintiff's alter ego assertions are vague and conclusory, and she has not identified any specific controverted jurisdictional facts that warrant discovery.  Moreover, the discovery requested by Plaintiff's counsel is extremely broad, and it fails to identify how, specifically, it would aid Plaintiff in rebutting CHS and Triad's substantial evidence that they lack dominion and control over Quorum.  The ability to seek discovery pursuant to Rule 56(d) "is not a licence for a fishing expedition," *Lewis v. Ft. Collins*, 903 F.2d 752, 758 (10th Cir. 1990), yet that appears to be what Plaintiff is seeking through her wide-ranging, non-specific request.  In seeking discovery in this manner, Plaintiff must describe with particularity probable facts not available, and how those facts will likely rebut Defendants' evidence. *See Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007).  Plaintiff has put forth no more than conclusory allegations of dominion and control and a generalized view of the broad discovery that she seeks to take, and her request is therefore denied.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant CHS/Community Health Systems, Inc.'s *Motion to Dismiss for Lack of Personal Jurisdiction* [Doc. 17] and Defendant Triad

Healthcare Corporation's *Motion to Dismiss for Lack of Personal Jurisdiction* [Doc. 18] are GRANTED.

_____
**UNITED STATES DISTRICT JUDGE**